UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LATOYA STEWARD, | ) | |
| | ) | |
| Debtor, | ) | Case No. 4:14 CV 1094 RWS |
| _____ | ) | |
| | ) | |
| JAMES C. ROBINSON, | ) | |
| CRITIQUE SERVICES LLC, and | ) | |
| ELBERT A. WALTON, JR., | ) | |
| | ) | Bankruptcy Case No. 11-46399-705 |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LATOYA STEWARD, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM

Appellants in this matter were sanctioned by the bankruptcy court[1] in the underlying bankruptcy case.   Appellants have filed an appeal in this Court seeking to overturn the bankruptcy court's judgment and sanctions.   After a review of the briefs and the record in this matter I find that the bankruptcy court had the authority and sound reasons for imposing its judgment and sanctions against Appellants.   As a result, I will affirm the bankruptcy court's judgment and order.

*Background*

The events underlying this appeal are clearly and extensively recorded in the bankruptcy court's Amended Memorandum Opinion and Order dated June 11, 2014.   An abbreviated version of events which is taken from that order and from the record before the bankruptcy court submitted in this appeal reveals the following:

Appellant James C. Robinson is a longtime practitioner in the United States Bankruptcy Court for the Eastern District of Missouri.   Robinson has an affiliation with Appellant Critique Services L.L.C. (Critique).   Robinson / Critique's bankruptcy practice is based on the low-cost / high volume representation of individuals before the bankruptcy court.   Robinson has represented in bankruptcy court documents that he does business as / practices law as Critique.   However, it is unclear from the record before the bankruptcy court whether Critique is a legal or fictional entity.   It is also unclear who owns or has an ownership interest in Critique, what services Critique provides to Robinson's clients, and what other attorneys, if any, are employed by Critique.   In the proceedings in this case, the bankruptcy court relied on Robinson's representations that Critique was the d/b/a of Robinson.   The issue of the legal nature and identity of Critique was important in

---

[1] United States Bankruptcy Judge Charles E. Rendlen, III.

the bankruptcy court proceedings because Critique employees helped Appellee / Debtor LaToya Steward prepare her bankruptcy filings and received fees from Steward.   The bankruptcy court stated in its sanctions order at issue that the monetary sanctions he imposed on Robinson and Critique are imposed jointly and severally upon these parties in the event that they are not the same entity as has been represented by Robinson.

Appellee Steward is the debtor in the underlying bankruptcy case.   In 2010, she engaged Robinson to represent her in filing for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code.   To initiate her bankruptcy case, Steward made several visits to Critique's office and met with Critique staff members to pay fees and complete paperwork.   The bankruptcy court found in its Amended Memorandum and Opinion and Order, dated June 11, 2015, that Critique staff members solicited Steward to include false information in her petition papers (a false address and fictional dependents).   Robinson was made aware of at least some of these false representations but failed to correct them.   Steward's petition was filed with the bankruptcy court on June 17, 2011.   Steward signed her petition papers at the pages tabbed by Critique for signature.   However, she did not read her petition papers and did not discover the false statements in her papers until she reviewed her papers with new counsel in 2013.

~ 3 ~

The bankruptcy court found that Robinson and Critique were highly unprofessional in their representation of Steward *in addition to* soliciting and including false information in her petition papers: (1 ) Robinson and Critique failed to communicate with Steward; (2) they improperly maintained her file; and (3) they abandoned Steward in her efforts to rescind a reaffirmation agreement that she had entered with Ford Motor Credit.

As a direct result of not rescinding the reaffirmation agreement, Steward surrendered her vehicle and remained obligated on the debt to Ford Motor Credit.

On December 4, 2012, Steward filed a pro se complaint against Ford Motor Credit in an adversary proceeding in her bankruptcy case.   She claimed her debt should be discharged based on Robinson and Critique's failure to represent her in her effort to rescind the reaffirmation agreement.   Robinson received an electronic notice of this action.   Ford Motor Credit moved to dismiss arguing that the professional negligence of Robinson and Critique could not be the grounds for Steward's debt to Ford Motor Credit to be discharged.   At the hearing of the motion, Steward made an oral motion to substitute Robinson and Critique for Ford Motor Credit.   The bankruptcy court ultimately entered an order granting the motion to dismiss, denying Steward's motion to substitute parties, but granting Steward fourteen days to file whatever pleadings she deemed appropriate against

Robinson and Critique.

Steward filed an amended complaint in the adversary proceeding against Robinson and Critique seeking a refund of the attorney fees she paid to them and other damages for their failure to represent her.   The bankruptcy court, liberally construing Steward's pro se filing, determined that this request was one for a disgorgement of fees which is a claim that should be made in the main bankruptcy case pursuant to 11 U.S.C. § 329(b) and not in an adversary proceedings. Accordingly, the amended complaint was re-docketed as a motion to disgorge fees in the main bankruptcy case.

It is the actions of Appellants in the disgorgement of fees litigation which gave rise to the sanctions imposed on them and the basis of this appeal.

On April 8, 2013, the bankruptcy court provided Robinson and Critique with notice of a hearing of Steward's motion to disgorge set on May 8, 2013.   Pursuant to Local Bankruptcy Rule (L.B.R.) 9013-13, Robinson and Critique were required to file a response to the motion within seven days.   They failed to do so.   On May 7, 2013, one day before the hearing, Appellant Elbert Walton entered his appearance on behalf of "James Robinson d/b/a Critique Services, L.L.C."   On the same day Walton filed an untimely response to the motion to disgorge and mailed a copy to Steward, which meant that she would not receive a copy of the response

~ 5 ~

before the hearing.

The May 8, 2013 hearing was continued to May 15, 2013 because Steward was late for the hearing.   Steward, Robinson, and Walton appeared at the May 15, 2015 hearing.   The hearing was continued again because Steward had just received Robinson and Critique's response to her motion and it became apparent that the parties had not attempted to communicate in advance of the hearing as is required by L.B.R. 2093(B) and the parties had not prepared a joint stipulation of uncontested facts.   The hearing was continued to June 26, 2013.

On June 17, 2013, counsel entered an appearance for Steward.   Counsel also filed a motion to convert the June 26, 2013 hearing into a status conference.   That motion was granted and the status conference was ultimately continued to August 14, 2013.

On June 26, 2013, Steward served interrogatories and requests for production on Robinson d/b/a Critique.   The discovery sought, among other information, to clarify and identify the relationship between Robinson and Critique.

On July 10, 2013, Steward recanted her prior statements made in her bankruptcy documents which were compiled and submitted by Robinson and Critique.   She filed amended documents with the bankruptcy court which included a summary of the factual corrections.

~ 6 ~

On July 20, 2013, Appellants filed a motion to quash Steward's discovery requests.   The motion wrongly asserted that discovery was not permitted in a contested bankruptcy matter.   The bankruptcy court denied the motion on July 31, 2013 as frivolous and vexatious.

Appellants' responses to the discovery requests were due no later than July 26, 2013.   Appellants did not file any responses, objections, or request a protective order.   On August 14, 2013, Walton appeared before the bankruptcy court for Robinson and Critique at the discovery status conference.   He stated that the responses to the discovery were complete and would be provided the next day. Walton indicated that everything would be produced with the exception of some personal financial information.   Another status conference was set on September 4, 2013.

Appellants did not provide discovery responses until the evening of September 3, 2013 which did not allow Steward's counsel to review the responses before the hearing set on September 4, 2013.   As a result, the status conference was continued to September 11, 2013 to allow counsel to review the responses.

At the September 11, 2013, it became apparent that the discovery responses were grossly insufficient.   Walton's representation at the August 14, 2013 hearing that the responses were complete had been misleading.   For the most part, the

responses were refusals to respond based on untimely, non-specific objections. Those objections were asserted based on scope, vagueness, relevancy, work product or harassment.   Walton's demeanor at the September 11th hearing was combative, argumentative, and disrespectful to both the bankruptcy court and to Steward.   He blamed Robinson for not providing him with discovery, he accused Steward of perjury, and he declined to produce anything further subject to his discovery objections absent a motion to compel filed by Steward.   This last position was baseless because Appellants had already waived their right to object to the discovery by failing to file objections in a timely fashion as required by the Federal Rules of Civil Procedure.[2]

The bankruptcy court patiently handled Walton's disrespectful manner and continued the matter to September 18, 2013 to allow Steward to file a motion to compel.   On September 16, 2013, Steward filed her motion to compel and moved to expedite the hearing of the motion to be held on September 18, 2013 at the status conference.   Appellants consented to the motion to expedite and filed a response to the motion to compel on the morning of the September 18th hearing.

The September 18th hearing mirrored the bad conduct evidenced at the

---

[2] Appellants needed to file their objections to Steward's discovery requests by July 26, 2013 (thirty days after request made).   The objections were not filed until September 3, 2013, well after the deadline to file objections. <u>See</u> Fed.R.Civ. P. 33 and 34.   As a result, Appellants waived any objections to Stewart's discovery requests.

September 11th hearing.   Walton was disrespectful to the bankruptcy court, attempted to disparage Steward, asserted legally frivolous positions, and revealed that he, Robinson, and Critique improperly withheld discovery and forced Steward to file a motion to compel to obtain the discovery which had been withheld in bad faith.   The bankruptcy court ruled that Appellants had waived any objections to discovery. The court granted the motion to compel and ordered Appellants to provide all the information sought in discovery within seven days.   The court allowed Appellants to file any financial information under seal.

In addition, the bankruptcy court ordered Robinson and Critique to pay Steward's counsel $1,710.00 in attorney's fees related to the prosecution of the motion to compel.   The bankruptcy court also imposed a sanction of $1,000.00 a day for each day Robinson and Critique fail to fully comply with discovery after the seven day deadline.   Finally, the bankruptcy court's order addressed Walton.   The court noted Walton's unprofessional and disrespectful demeanor in the courtroom in his last several appearances and notified Walton that if he exhibited similar behavior in the future, Walton would be personally fined $100.00 for each act of disrespectful behavior.   The bankruptcy court ended the order with the statement, "In the future, Mr. Walton should bring to this Court either a professional, respectable demeanor or his checkbook."   [App. Vol. II at 333]

Instead of producing discovery, Appellants assailed the bankruptcy court with a slew of motions over the next several days.   They included:

- a motion to recuse;

- a motion for judgment on the pleadings;

- a motion to set aside the order compelling discovery;

- a motion to dismiss;

- and an amended motion to dismiss.

In the motion to recuse Walton referred several times to Critique as Robinson's d/b/a and as the law firm through which Robinson does business.   The bankruptcy court denied all of these motions because they were without merit.   A status conference was set on October 1, 2013.

At the October 1, 2013 status conference, it was revealed that no further discovery had been provided since the order to compel has been granted. Moreover, Walton stated for the first time that Robinson and Critique would not comply with the court's orders, but instead, would seek leave to appeal and would file a petition for a writ of mandamus.   On October 2, 2013, the bankruptcy court entered an order, in a second attempt to obtain compliance with the court's previous order, which sanctioned Robinson and Critique $1,000.00 per day for each day of noncompliance going forward thereafter, and gave notice that, after thirty days, the

~ 10 ~

bankruptcy court may impose further sanctions.   The order also provided that the sanctions would not accrue on any day that there was a pending request for leave to file an appeal or a pending appeal.

Appellants filed a notice of appeal on October 2, 2013 and filed a motion with the Bankruptcy Appellate Panel (B.A.P.) for leave to file three interlocutory appeals.   Appellants also filed a motion to stay in the bankruptcy court.   The motion to stay was denied on October 4, 2013.   On October 8, 2013, the B.A.P. denied the motion for leave to file interlocutory appeals.   On October 9, 2013, the $1,000.00 per day sanctions began to accrue.

On November 1, 2013, Appellants filed a motion for a writ of mandamus in the United States District Court for the Eastern District of Missouri which was denied on December 10, 2013.

Between October 9, 2013 and November 12, 2013, Robinson and Critique refused to comply with the court order compelling discovery.   By then, $35,000.00 of sanctions had accrued.   On November 13, 2013, the bankruptcy court, realizing that its order compelling discovery was being ignored, entered a second order imposing sanctions which stopped the accrual of further monetary sanctions, made a finding of contempt pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii), and entered an order making the sanctions, which had already accrued, final and payable.   This

sanctions order was not imposed to induce the production of discovery, it was imposed as a sanction for Robinson and Critique's willful refusal to comply with the bankruptcy court's previous order compelling discovery.   However, the sanctions could still be avoided if Robinson and Critique complied with the order to compel and produced the requested discovery.

On November 27, 2013, Appellants filed a notice of appeal seeking to appeal the second order of sanctions in the United States District Court for the Eastern District of Missouri.   Appellants asserted that the second order of sanctions was a final order for criminal sanctions.   However, the order was an interim order and of a civil nature because Appellants could purge themselves of contempt by producing the ordered discovery.   In order to clarify the availability of purgation for Appellants, the bankruptcy court filed a notice to Appellants, on December 2, 2013, regarding the sanctions imposed.   The notice stated that if the Appellants decided to properly participate in discovery the court would deem that sanctions were no longer necessary.   However, it was clear that if the discovery sanctions were enforced, they were payable to the bankruptcy court for Appellants' disregard of the court's orders.   These sanctions could not be avoided by the parties reaching a settlement in the case.

On January 23, 2014, in another attempt to allow Appellants to avoid the

sanctions already imposed in the case, the bankruptcy court asked the Chapter 7 Trustee to communicate to the Appellants that the sanctions could be satisfied by an alternate, nonmonetary method.   The alternate proposal required Robinson and Critique to provide, under seal, information about the ownership and structure of Critique (to clarify once and for all how Robinson and Critique are related); file a letter of apology for their contempt; admit they made, through their attorney, false representations in the bankruptcy proceedings; agree to attend continuing legal education; and agree not to be represented again by, or serve as co-counsel with, Walton before the bankruptcy court (to ensure that the improper actions taken in the matter would not repeated in the future).   This proposal was an alternative to Robinson and Critique's option of paying the $35,000.00 sanction and having Walton continue to represent them.

In January 2014, Appellants attempted to settle the disgorgement action with Steward as well as a second adversary complaint which had been filed in the case. On March 22, 2014, Steward filed a notice in the bankruptcy case that the settlement efforts had collapsed.   Thereafter, the bankruptcy court proceeded on the disgorgement action and the related sanctions issues involved in the case.

On April 3, 2014, the bankruptcy court entered two notices regarding sanctions.   The first informed Robinson and Critique that the court was considering

~ 13 ~

further and final sanctions for their failure to comply with court ordered discovery. These additional sanctions included, striking their pleadings, rendering a default judgment against them, and entering any other sanction and relief authorized by law.   The second notice was directed to Walton informing him that the court was considering imposing sanctions against Walton.   Sanctions may be imposed against an attorney who represents a party who refuses to cooperate with discovery and participates in his client's contemptuous or vexations behavior.   Walton was notified that he could be sanctioned for his actions including, vexatiously increasing the costs of litigation by interfering with discovery; making false representations to the court; filing frivolous motions for the purpose of avoiding discovery; asserting untimely and waived objections to discovery; and making false allegations against the presiding bankruptcy judge.   A response to both notices was due by April 11, 2014.

On April 7, 2013, the bankruptcy judge entered an order directing Steward's counsel to file an affidavit attesting to his attorney's fees, costs, and expenses.[3] The order stated this information was going to be considered in the imposition of additional sanctions against Robinson, Critique, and Walton.

On April 10, 2013, Walton filed a motion to withdraw as counsel.   On the

_____

[3] Although Steward's counsel was representing her pro bono, the bankruptcy court determined that counsel should

same day Robinson filed a notice of dismissal purporting to dismiss Walton as his counsel.   Both the motion and notice were denied by the bankruptcy court which saw the motions as hollow attempts by Walton to avoid sanctions.

Also, on April 10, 2013, Steward filed a motion to compromise controversy, a notice to the court regarding discovery, and a proposed settlement under seal.

On April 11, 2013, Robinson filed a response to the notice of sanctions which did not substantively address the issues raised in the court's notice.   Walton did not file a response to the notice of sanctions directed to him.   Instead he filed a second motion to recuse the bankruptcy judge from the case.   The bankruptcy judge denied this motion on April 14, 2014.

Also on April 11, 2014, the bankruptcy court ordered Steward to accept discovery should Appellants attempt to provide the discovery in an eleventh hour effort to avoid sanctions.

Walton also filed a motion to substitute attorney on April 11, 2014, asserting that he had a conflict with Robinson and Critique.   Because he failed to provide any facts in support of this motion, the bankruptcy judge denied it without prejudice to allow it to be refiled with a supporting factual basis.   Walton did not renew this motion and continued to file papers on behalf of Robinson and Critique.

---

compute what his usual fees would have been regarding the discovery dispute to craft a reasonable sanction.

On April 14, 2014, Walton filed a civil suit in the Circuit Court of the City of St. Louis against the bankruptcy judge in his personal capacity, alleging claims related to the bankruptcy court's offer of an alternate method to satisfy the sanctions imposed in the disgorgement proceedings.   This case was removed to the United States District Court for the Eastern District of Missouri.   The district court dismissed the case based on judicial immunity on September 12, 2014.

On April 21, 2014, the bankruptcy judge entered another notice to Robinson, Critique, and Walton providing notice that the court intended to impose sanctions against them for making false statements about the judge's service in government employment as the United States Trustee for Region 13.   The court gave them until April 28, 2014 to file joint or separate responses.

On April 23, 2014, Appellants filed a third motion to recuse the bankruptcy judge which the bankruptcy court denied the same day.

On April 28, 2104, both Watson and Robinson filed a response to the notice of sanctions dated April 21, 2014.   Neither response offered any cause why sanctions should not be imposed nor did they request a hearing on whether sanctions should be issued.

Also on April 28, 2014, the bankruptcy court denied Steward's motion to compromise controversy without prejudice, subject to refiling by or jointly with the

~ 16 ~

Chapter 7 Trustee.

Finally, on June 10, 2014, the bankruptcy judge entered the judgment imposing sanctions and on June 11, 2013, he entered the amended memorandum opinion and order in support of the judgment which is the basis of this appeal.   The order noted that it was being entered because the imposition of escalating sanctions had proved to be ineffective.

The bankruptcy judge found Robinson and Critique in contempt and that their "contempt was facilitated and promoted by Mr. Walton through his strategy of untimeliness, obfuscation, vexatious litigation, misleading representations, false statements, abuse of process and frivolous legal positions."   The order made final and immediately payable, the $30,000.00[4] sanction for Robinson and Critique's refusal to comply with the bankruptcy court's order compelling discovery.   In addition, the court struck Robinson and Critique's claims and defenses in the disgorgement action.

The bankruptcy court's order imposed sanctions against Walton for his actions in the case.   The court made Walton jointly and severally liable for the $30,000.00 in sanctions imposed upon Robinson and Critique.   The order stated that Walton had endorsed, facilitated, and actively promoted Robinson and

---

[4] This amount had originally been $35,000.00 but was reduced by the bankruptcy court.

Critique's refusal to meet their discovery obligations.   The order stated that "Mr. Walton's actions have been just as disgraceful, abusive and worthy of sanctions as have been those of his clients."

The bankruptcy court's order also ruled in favor of Steward's disgorgement claim, in part.   The court awarded her a refund of the $495.00 in fees she paid to Robinson and Critique.   However, the court denied any relief related to damages incurred by Steward in her dispute with Ford Motor Credit.   The court's order stated that Steward's claims against Robinson and Critique related to their failure to render legal services to Steward to rescind the reaffirmation agreement was beyond the scope of a disgorgement action.   That claim needed to be brought as a malpractice action.

The bankruptcy court's order also imposed a sanction against Robinson, Critique, and Walton, jointly and severally, in the amount of $19,720.00 for attorney's fees Steward's counsel incurred litigating the discovery dispute at issue in this matter.[5]

In addition, the bankruptcy court sanctioned Robinson, Critique, and Walton under Federal Rules of Bankruptcy Procedure Rule 9011 for making false statements at hearings and in pleadings, including but not limited to, false

---

[5] Only $1,710.00 of the fees were to be made directly to Steward's counsel.   The remaining $18,010.00 in fees were

statements regarding the status of discovery responses and the intent to produce discovery, and false statements made about the bankruptcy judge's previous employment as the United States Trustee in various pleadings.   Instead of imposing monetary sanctions, the bankruptcy court's order stated that the Rule 9011 sanctions would be combined with sanctions under the court's inherent power and under the local rules and directives of the bankruptcy and district courts to suspend Robinson and Walton from practicing law before the United States Bankruptcy Court for the Eastern District of Missouri.

Robinson's suspension was imposed for one year and his privileges will not be reinstated after one year unless: (i) Robinson provides specific information required by the order regarding his relationship with Critique and the nature of Critique's bankruptcy business; (ii) the monetary sanctions imposed in the order are satisfied; (iii) Robinson provides evidence he is in good standing in all other courts in which he has been admitted to practice; and (iv) the facts otherwise establish reinstatement is proper.

Walton's suspension was also imposed for one year and his privileges will not be reinstated after one year unless: (i) the monetary sanctions imposed against Walton in the order are satisfied; (ii) he provides evidence he is in good standing in

---

to be remitted to a local legal services charity of Steward's counsel's choice.

all other courts in which he has been admitted to practice; and (iii) the facts

otherwise establish reinstatement is proper.

Finally, the bankruptcy court ordered that the actions of Robinson, Critique,

and Walton be referred to the United States District Court for the Eastern District of

Missouri for any disciplinary investigation that may be proper; to the Office of the

United States Trustee as a report of suspected bankruptcy fraud or abuse; and to the

Office of Chief Disciplinary Counsel of the Missouri Supreme Court for violations

of the rules of professional conduct.

Appellants filed the present appeal in this Court seeking to overturn the

bankruptcy court's judgment.   Appellee Steward opposes the appeal and argues

that the bankruptcy court's judgment should be affirmed.

### *Jurisdiction and Legal Standard*

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

Appellants filed a timely notice of appeal.

"When a bankruptcy court's judgment is appealed to the district court, the

district court acts as an appellate court and reviews the bankruptcy court's legal

determinations de novo and findings of fact for clear error." Fix v. First State Bank

of Roscoe, 559 F.3d 803, 808 (8th Cir. 2009) (internal quotation and citation

omitted).   Issues committed to the bankruptcy court's discretion are reviewed for an

abuse of that discretion. <u>In re Zahn</u>, 526 F.3d 1140, 1142 (8th Cir. 2008).   An

abuse of discretion occurs when the bankruptcy court fails to apply the proper legal

standard or bases its order on findings of fact that are clearly erroneous. <u>Id.</u>

### *Discussion*

Appellants raise a host of grounds for relief on appeal.   The bankruptcy

court's amended memorandum opinion and order thoroughly addressed many of

these grounds which Appellants raised previously in the bankruptcy court.   I find

each of the grounds for relief raised by Appellants to be without merit.

Appellants claims are:

*The Debtor did not have standing to bring her disgorgement claim because it*

*belonged to the Chapter 7 Trustee*

A review of the record reveals that Steward did have standing to bring he

claim for disgorgement.   A debtor's bankruptcy estate is comprised of all her legal

and equitable interests in property as of the commencement of the bankruptcy case.

11 U.S.C. § 541(a)(1).   The injuries that form Steward's complaint occurred both

before and after her bankruptcy case commenced on June 17, 2011.   The Chapter 7

Trustee abandoned any interest in Steward's bankruptcy estate, first on July 26,

2011, before the motion to disgorge was filed.   The Trustee again abandoned any

interest in the estate on July 26, 2013, after the motion to disgorge was filed.   To

the extent any part of the disgorgement claim was part of Steward's estate before she filed for bankruptcy, that aspect of the claim was abandoned by the Trustee . As a result Steward had standing to pursue her claim.

*Judge Rendlen should have recused himself because he had been an adversary against Critique Services, L.L.C. before becoming a judge*

Ten years before being appointed to the bankruptcy bench, the bankruptcy judge had been the United States Trustee for Region 13.   He served in that capacity for three years.   He supervised assistant United States Trustees in their duties.   He was the named plaintiff in actions brought by his office.   While he was the Trustee, his office investigated and filed two lawsuits against Critique Services L.L.C. and certain of its employees (but not against Robinson).   Both cases settled.   The bankruptcy judge did not personally conduct an investigation, draft pleadings, or otherwise direct the prosecution of Critique in those cases.

Appellants argue that the bankruptcy judge should have recused himself under 28 U.S.C. § 455(a).[6]   That statute directs that a judge "shall disqualify himself in ay proceeding in which his impartiality might reasonably be questioned." Appellants assert that the judge's former position as the United States Trustee and

---

[6] Appellants also halfheartedly assert that the judge should have recused himself under 28 U.S.C. § 144.   However, that statute only applies to district court judges and Appellants have failed to file a sufficient affidavit as required by that rule.

the lawsuits filed against Critique while he was Trustee supports a claim that the judge's impartiality toward Critique might reasonably be questioned by an objective, neutral observer.   However, nothing in the record supports such a finding.   There is no evidence that any facts or issues that were raised in those proceedings were relevant or related to Steward's motion to disgorge.   Nor is there any evidence that the bankruptcy judge was personally involved the investigation or prosecution of those lawsuits

Appellants also allege that the bankruptcy judge engaged in personalized attacks against Walton and Robinson.   The record does not support this accusation. To the extent that the judge expressed his exasperation or impatience with Robinson and Walton's actions and demeanor, such expressions do not establish judicial bias. Liteky v. United States, 510 U.S. 540, 555-556 (1994)(a judge's display of impatience, dissatisfaction, annoyance, and even anger based on proceedings in a case do amount to bias or impartiality).   There is nothing in the record which would give a reasonable person a reasonable basis for questioning the judge's impartiality.   As a result, the bankruptcy judge properly denied Appellants' motion to recuse.

*Debtor acknowledged that the attorney's fees she paid were disgorged resulting in the bankruptcy court losing jurisdiction over the subject matter*

~ 23 ~

Appellants claim for the **first time** on appeal that Steward's disgorgement claim became moot when a payment of $199.00 was made to her counsel by a third party.   A ground for relief raised on appeal that was not raised in the trial court cannot be considered on appeal as a basis for reversal.   Gregory by Gregory v. Honeywell, Inc., 835 F.2d 181, 184 (8th Cir. 1987) ("It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal.")(internal quotes and citation omitted).   Because this ground for appeal was not raised in the bankruptcy court, it fails here.

Even if I did consider this ground for relief, it is without merit.   In a declaration dated November 12, 2013, an attorney also associated with Critique, Ross Briggs, remitted $199.00 to Steward's counsel.   Briggs indicated that the $199.00 was the fee that Steward paid for her bankruptcy filing.   But Briggs never represented Steward.   In addition, the record established in the bankruptcy court that Steward paid a fee of $495.00.   Nothing in the record indicated the $199.00 was from Robinson or Critique.   Nor did Steward accept this money as a settlement of her claim.   As a result, the payment of this fee to Steward's counsel did not deprive the bankruptcy court of subject matter jurisdiction over the case.

~ 24 ~

*No sanctions should have been entered against Critique Services, L.L.C. because no discovery was directed toward it*

Appellants assert for the first time on appeal that Robinson and Critique are two separate entities.[7]   Appellants failed to raise this issue to the bankruptcy court and did not offer or introduce any evidence in that court to show they are two separate entities.   As this issue was not raised in the bankruptcy court, it cannot be raised for the first time here.   See Honeywell, Inc., 835 F.2d at 184.

Moreover, the bankruptcy court made a finding that Robinson and Critique are the same entity.   Through multiple pleadings Robinson asserts that Critique was his d/b/a and that Critique was Robinson's law firm.   Watson entered his appearance and represented both Robinson and Critique.   Discovery was directed to both Robinson and Critique and they never asserted a claim or made a response that they were two different entities.   That was part of the trouble with discovery, Robinson and Critique refused to provide discovery regarding their relationship.

As a result, I find that discovery was directed to Critique Services, L.L.C. in the bankruptcy court.

---

[7] Appellants have submitted Articles of Incorporation for Critique Services L.L.C. for consideration in this appeal. However, this document was not provided in the proceedings before the bankruptcy court and will not be considered for the first time in this Court on appeal.

*The bankruptcy court should have dismissed Critique Services, L.L.C. before any order was entered against it because of Plaintiff's failure to serve it*

This claim is also raised for the first time on appeal and will be denied for that reason.  Honeywell, Inc., 835 F.2d at 184.   Moreover, Robinson held himself out to the bankruptcy court as Critique.   Walton and Robinson made numerous representation in the bankruptcy court that Robinson was doing business and Critique and that Critique was his law firm and Critique's staff was his staff.   It a minimum, Appellants waived the bankruptcy court's personal jurisdiction over Critique through their false representations and their conduct in litigation.   Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990)( defendant can waived a defense of lack of personal jurisdiction through conduct before the court).

*The bankruptcy court should have dismissed the motion to disgorge because of the Debtor's bad conduct of admittedly lying under oath*

Appellants assert that Stewart's motion to disgorge should have been dismissed by the bankruptcy court under the doctrine of unclean hands.   Appellants assert that Stewart admitted she submitted her initial bankruptcy papers with false information about her address and about dependents.   Based on these false representations, Appellants argue her disgorgement case should have been dismissed.

~ 26 ~

The doctrine of unclean hands is not based on absolutes.   It requires consideration of all the facts and circumstances of a particular case so that its application promotes justice.   Nelson v. Emmert, 105 S.W.3d 563, 568 (Mo. Ct. App. 2003).   The doctrine cannot be asserted by a party who also has unclean hands.   Rose v. Houser, 206 S.W.2d 571, 577 (Mo. Ct. App. 1947)(the pot cannot call the kettle black).   Based on the bankruptcy court's ruling, all the facts alleged by Steward in her disgorgement proceeding are deemed to be true.   Steward asserted that it was Robinson and Critique who induced her to make false representations regarding her address and dependent status.   Appellants cannot be rewarded for their own actions in inducing such false information through the doctrine of unclean hands.   Moreover, Steward corrected any incorrect information in her initial bankruptcy papers.   As a result, the bankruptcy judge did not err in refusing to dismiss Steward's disgorgement claims based on the doctrine of unclean hands.

*The bankruptcy court had no authority to sanction Appellants for discovery failures once the parties settled their differences*

This ground for relief was also not raised in the bankruptcy court and fails for that reason.   Honeywell, Inc., 835 F.2d at 184.    It also fails because there was no settlement of the disgorgement claim.   The claim was not settled because the

proposed settlement agreement was specifically conditioned upon the bankruptcy
court's approval of the settlement.   The bankruptcy court rejected the settlement
without prejudice subject to the review and approval of the settlement by the
Chapter 7 Trustee.

*The bankruptcy court was without authority to change Debtor's amended
complaint in the adversary proceeding into a motion to disgorge attorney's fees in
Debtor's Chapter 7 case*

The bankruptcy court properly viewed the pro se amended complaint
Steward filed in her adversary proceeding as more appropriately deemed to be a
disgorgement proceeding.   The court had subject matter jurisdiction over that
proceeding.   Walton v. LaBarge (In re Clark), 223 F.3d 859, 863 (8th Cir. 2000)
("The bankruptcy court has the broad power and discretion to award or deny
attorney fees, and, indeed, a duty to examine them for reasonableness.").   The court
also had the power to cause improperly docketed pleadings re-docketed correctly.
Winston v. Friedline, 2009 WL 3747225, 2 (W.D. Pa. November 5, 2009)
(re-docketing a pro se complaint as a motion for sanctions "in fairness" to the
nature of the document).   As a result, the bankruptcy court did not err by
re-docketing Steward's amended adversary proceeding complaint as a motion to
disgorge in contested proceeding in the main bankruptcy case.

~ 28 ~

*The sanctions and penalties entered by the bankruptcy court were for criminal contempt for which it had no authority and were not pursuant to a motion, notice and hearing as required by bankruptcy rules*

The bankruptcy court did not err by imposing monetary sanctions against Appellants.   The bankruptcy court clearly states and explains in its order that the monetary sanctions it imposed were civil in nature.

The attorney's fees sanction of $19,720.00 was imposed against Appellants pursuant to Fed. R. Civ. P. 37(b)(2)(C)[8] and 11 U.S.C § 105(a).[9]   Although Steward's counsel was providing pro bono representation, the bankruptcy court had counsel submit an affidavit of counsel's usual fees counsel would have charged based on Appellants' failure to comply with discovery.   The bankruptcy court had the power to order the disobedient party, Appellants, to pay the reasonable attorney's fees incurred by Appellants' failure to comply with the courts discovery orders.   To not allow such a sanction because Steward's counsel was providing pro bono representation would amount to a windfall for Appellants.   It is permissive, fair, and just for Appellants to bear the expense of the burden of time, effort, and expense Steward's counsel spent in response to Appellants' bad acts.

---

[8] Rule 37(b)(2)(C) provides for sanctions in the form of attorney's fees and expenses.
[9] Section 105(a) states, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination

Similarly, the $30,000.00 in sanctions the court imposed for Appellants obstinate refusal to comply with the court's discovery orders were authorized by Rule 37(b)(2)(A) and 11 U.S.C. § 105(a).   Moreover, Appellants were given numerous opportunities to purge themselves of the bankruptcy court's sanctions. In addition, Appellants were provided with multiple notices that the imposition of sanctions was being considered by the bankruptcy court and they were given ample opportunities to file responses and request hearings before the sanctions were imposed.

As a result, the bankruptcy judge did not err by imposing monetary sanctions against Appellants.

*Under local rule of court, a single judge does not have the authority to suspend an attorney from practice before it*

Appellants contend that the bankruptcy court does not have the authority to unilaterally suspend an attorney from practice before the bankruptcy court.   The Appellants argument turns on their interpretation of the Local Rules of the United States Court for the Eastern District of Missouri (E.D.Mo. L.R.) and the District Court's Rules of Disciplinary Enforcement.

Local Bankruptcy Rule 2094-C provides that "[n]othing in this Rule shall

---

necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

preclude the Court from initiating its own attorney disciplinary proceedings

regardless of whether an attorney has been disciplined by another court," and

L.B.R. 2090-A provides that the bankruptcy court adopts "[t]he requirements for …

attorney discipline … outlined in the Rules 12.01-12.05" of the E.D.Mo. L.R.

E.D.Mo. L.R. 12.02 provides that:

> [a] member of the bar of this Court and any attorney appearing in any action in this Court, for good cause shown and after having been given an opportunity to be heard, may be disbarred or otherwise disciplined, as provided in this Court's Rules of Disciplinary Enforcement. In addition, *a judge may impose sanctions pursuant to the Court's inherent authority*, Fed.R.Civ.P. 11, 16 or 37, or any other applicable authority, and may initiate civil or criminal contempt proceedings against an attorney appearing in an action in this Court.

 (emphasis added).

The Eastern District's Court's Rules of Disciplinary Enforcement (E.D.Mo.

R.D.E.) contain two relevant provisions.   The first is Rule IV-A which provides:

> [f]or misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

This rule allows a judge to disbar an attorney from practicing before the bar (in this

case the bankruptcy court) for misconduct, for good cause, after notice and an

opportunity to be heard.

In imposing the suspension of Robinson and Walton in this case, the bankruptcy court relied on its inherent authority under Supreme Court precedent, E.D.Mo. L.R. 12.02, and E.D.Mo. R.D.E. Rule IV-A.   The bankruptcy court's order and the court's record thoroughly detail Robinson's and Walton's misconduct and violations of the rules of professional ethics.   The bankruptcy judge provided good cause for the suspension sanction and provided ample notice and opportunities to be heard to Robinson and Walton.

Appellants argue that their license to practice can only be suspended by following the procedures stated in second relevant provision of the E.D.Mo. R.D.E., Rule V.   That Rule provides,

> [w]hen misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney admitted to practice before this court shall come to the attention of a Judge of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Rules, the judge may refer the matter to counsel appointed under Rule X for investigation and prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate.

Under Rule V appointed counsel may initiate a formal disciplinary proceeding and a hearing is conducted before a panel of three judges.

The bankruptcy court had the authority and, in this case, a justifiable basis, to suspend Robinson's and Walton's privilege to practice before the bankruptcy court

for one year.   The bankruptcy court did not need to refer the matter to appointed

counsel for "investigation and prosecution of a formal disciplinary proceeding"

because the misconduct at issue was directed at and witnessed by the bankruptcy

court.   The authority to impose a suspension derives from the bankruptcy court's

inherent power.   Law v. Siegel, 134 S. Ct. 1188, 1194 (2014) (the bankruptcy court

possesses inherent power to sanction abusive litigation practices); Chambers v.

NASCO, Inc., 501 U.S. 32, 43-44 (1991) ("a federal court has the power to control

admission to its bar and to discipline attorneys who appear before it.")   "Because

of their very potency, inherent powers must be exercised with restraint and

discretion."   Id. at 44.   But that restraint and discretion does not bar severe

sanctions where they are warranted.   The bankruptcy court had the authority to

impose its suspension without initiating a "formal disciplinary proceeding" under

E.D.Mo. R.D.E. Rule V.

As a result, the bankruptcy court's decision to impose a one year suspension

of Robinson's ad Walton's privilege to practice before the bankruptcy court is

affirmed.

### *Conclusion*

It is clear from the record that Robinson, Critique, and Walton's obstinate

behavior before the bankruptcy court was based, at least in part, on their effort to

shield any discovery of how Critique Services L.L.C. is organized and how it does business.   Critique, if it is a separate entity from Robinson, may impermissibly be practicing law and /or impermissibly sharing attorney fees with Robinson and other attorneys.   It also appears, based on Steward's experience, that Robinson and Critique are violating legal ethical rules in their representation of clients in bankruptcy matters.   However, the resolution of these issues is not the subject of this appeal.

It is also clear from the record that Robinson and Walton acted in an unprofessional, dismissive, and sanctionable demeanor toward the bankruptcy court throughout the litigation of this matter in that court.

Based upon the foregoing, the bankruptcy court's Judgment and Amended Memorandum Opinion and Order imposing sanctions on Appellants is affirmed.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2015.

~ 34 ~